IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**UNITED STATES OF AMERICA**

v.   CAUSE NO. 1:17CR83-LG-JCG-1

**MARCUS LADELL MOODY**

ORDER DENYING MOTION FOR COMPASSIONATE
RELEASE FILED BY MARCUS LADELL MOODY

**BEFORE THE COURT** is the [42] Motion for Compassionate Release filed by the defendant Marcus Ladell Moody. The Government filed a response in opposition to the Motion, and Moody, by and through appointed counsel, filed a reply. After reviewing the submissions of the parties, the record in this matter and the applicable law, the Court finds that the Motion for Compassionate Release should be denied.

BACKGROUND

Moody pled guilty to one count of possession with intent to distribute a detectable amount of Methamphetamine in violation of 21 U.S.C. § 841(a)(1). On June 28, 2018, the Court sentenced him to 143 months of imprisonment and 36 months of supervised release. He was also ordered to pay a $1500 fine and a $100 special assessment. According to the Federal Bureau of Prisons website, Moody's expected release date is October 22, 2027.

Moody filed the present Motion seeking compassionate release pursuant to 18 U.S.C. § 3582(c). He asks the Court to reduce his sentence to time served and order him released from prison. Although he briefly discusses the COVID-19 pandemic,

he primarily seeks this relief so that he can assist his family in caring for his older brother. He also argues, "The severity of a [pre-First Step Act] sentence, combined with the enormous disparity between that sentence and the sentence a defendant would receive today can constitute 'extraordinary and compelling reasons' for relief under . . . § 3582(c)(1)(A)." (Def.'s Mot. at 5, ECF No. 42 (quoting *United States v. McCoy*, 981 F.3d 271, 285 (4th Cir. 2020)).

## DISCUSSION

Congress has dictated that a prisoner seeking compassionate release must prove that (1) an "extraordinary and compelling reason" justifies the sentence reduction; (2) the relief sought is consistent with the Sentencing Commission's applicable policy statements; and (3) the 18 U.S.C. § 3553(a) sentencing factors weigh in favor of the requested relief. 18 U.S.C. § 3582(c)(1)(A). However, the Sentencing Commission has not issued a policy statement since the First Step Act amended § 3582 to allow prisoners, not just the BOP, to file compassionate-release motions. *United States v. Shkambi*, 993 F.3d 388, 392 (5th Cir. 2021). Since no applicable policy statement currently exists for prisoner-filed motions, a prisoner who files a compassionate-release motion must show only that (1) an "extraordinary and compelling" reason for relief exists and (2) a sentence reduction would be consistent with the § 3553(a) sentencing factors. *Id.* at 392-93. In the present case, Moody argues that the COVID-19 pandemic, family circumstances, and the alleged disparity between his sentence and the sentence that would be imposed today constitute extraordinary and compelling reasons.

### A. The COVID-19 pandemic

Moody is now forty-eight years old, and he does not discuss any health conditions in his Motion.  His medical records reflect that he has hypertension that is being monitored and managed by the prison.  He received his first dose of the Moderna COVID-19 vaccine on May 13, 2021, and the second dose on June 9, 2021.  (Gov't Resp., at 30, ECF No. 50).  He is incarcerated at the Pensacola Federal Prison Camp, which has zero active cases of COVID-19 among inmates and staff.  *See* Federal Bureau of Prisons COVID-19 Cases, https://www.bop.gov/coronavirus/ (last visited July 11, 2022).

The Fifth Circuit has held that "[f]ear of COVID doesn't automatically entitle a prisoner to release." *United States v. Thompson*, 984 F.3d 431, 435 (5th Cir. 2021).  Courts that have granted compassionate release based on the pandemic "largely have done so for defendants who had already served the lion's share of their sentences and presented multiple, severe, health concerns." *Id.* at 434-35.  The record reflects that Moody is relatively healthy, vaccinated, and in a prison with no active COVID-19 cases.  Under these circumstances, Moody has not demonstrated that the COVID-19 pandemic constitutes extraordinary and compelling circumstances that could justify a reduction in his sentence under 18 U.S.C. § 3582(c)(1)(A)(i).

### B. Family Circumstances

Moody also argues that his family needs his help in caring for his older brother, who is "severely ill, with a debilitating disease, causing as many as 10

seizures daily." (Def.'s Mot. at 4, ECF No. 42). The seizures are caused by Lennox-Gastaut Syndrome. (*Id.*) Moody claims that his early release from prison would "giv[e] his family a break" because he would be able "to assist with the care of his elderly and feeble brother." (*Id.* at 5, ECF No. 42). Moody's younger sister has provided a letter to the Court in support of Moody's Motion. (Def.'s Mot., Ex. 1, ECF No. 42-1). She states that their father was never around and left the family when she was ten years old. Their mother passed away two years ago from COVID-19. As a result, Moody's sister quit her job in order to care for their fifty-three-year-old brother who is disabled and suffers from ten to twenty seizures a day.

Another person who is seventy-four years old submitted an unsigned letter stating that they need Moody's help due to various health issues. (Def.'s Mot., Ex. 2, ECF No. 42-1). Moody's relationship to this person is unclear, but they claim he took them to appointments before he was sent to prison, and he has promised to help them more if he is released. Charlotte Brown, who identified herself as Moody's "significant other" and the mother of his children, also submitted a letter explaining that she suffers from diabetes, fibromyalgia, arthritis, and other chronic illnesses that prevent her from working and providing for their children as she desires. (Def.'s Mot., Ex. 3, ECF No. 42-1).

Although the Court is sympathetic to Moody's family's plight, the record reflects that Moody's older brother is being cared for by their younger sister. Since another caregiver is available, extraordinary and compelling circumstances do not exist. In addition, while Charlotte Brown asks that Moody be released to assist her

in providing for their children, Moody does not even mention Brown or their children in his Motion. According to the Presentence Investigation Report, the children of Brown and Moody are adults. Insufficient information has been presented concerning the identity and needs of the other individual who requested Moody's assistance, and Moody has not asked the Court to release him so that he can assist this person. As a result, Moody has not demonstrated that his family circumstances justify release.[1]

### C. Alleged Sentence Disparity

Finally, Moody argues:

> The dramatic changes in the sentence the Defendant would have received due to the changes in law from the [First Step Act of 2018] is itself [e]xtraordinary and compelling. As Congress felt the minimum mandatory was too severe, thereby changing the sentence recommendation directives, is supportive [sic] to a fresh look at the original sentence to assure fairness in applications of law(s), in accordance with equality.

(Def.'s Mot. at 2, ECF No. 42). However, Moody was held accountable for 4.5 kg or more of d-Methamphetamine ("Ice"). He was sentenced pursuant to 21 U.S.C. §

---

[1] Some of the letters in support that Moody submits ask that he be transferred to home confinement. The Court does not have authority to grant such relief. *See Cheek v. Warden of Fed. Med. Ctr.*, 835 F. App'x 737, 740 (5th Cir. 2020) ("It is the BOP and the Attorney General who have the discretion to consider the appropriateness of home release based on certain statutory and discretionary factors. . . . It is not for a court to step in and mandate home confinement for prisoners, regardless of an international pandemic."); *see also United States v. Lang*, 835 F. App'x 790, 791 n.5 (5th Cir. 2021) (explaining that the Coronavirus Aid, Relief, and Economic Security Act "authorizes prison authorities to lengthen the maximum amount of time to place a prisoner in home confinement under 18 U.S.C. § 3624(c)(2), which applies to 'prerelease custody' and not to compassionate-release sentence reductions under § 3582(c)(1)(A)").

841(b)(1)(C), which provides for a twenty-year maximum sentence but no mandatory minimum sentence. Therefore, Moody's argument regarding a mandatory minimum is unclear. The sentence imposed on Moody was 143 months, well below the adjusted guideline range of 210 to 240 months.[2] As a result, assuming for the sake of argument only that a sentence disparity could constitute an extraordinary and compelling reason justifying release, Moody has not demonstrated that there was any disparity in his sentence.

### D. Section 3553 Factors

Finally, even if Moody had presented evidence of an extraordinary and compelling reason under Section 3582(c)(1)(A), the Section 3553(a) factors weigh in favor of denying compassionate release. A reduction in sentence would not reflect the serious nature of Moody's crime, provide a just punishment, or deter similar conduct in the future. *See* 18 U.S.C. § 3553(a).

**IT IS THEREFORE ORDERED AND ADJUDGED** that the [42] Motion for Compassionate Release filed by the defendant Marcus Ladell Moody is **DENIED**.

**SO ORDERED AND ADJUDGED** this the 11th day of July, 2022.

s/ *Louis Guirola, Jr.*
LOUIS GUIROLA, JR.
UNITED STATES DISTRICT JUDGE

---

[2] Based on a total offense level of 37 and a criminal history category of I, the guideline imprisonment range was 210 to 262 months. Since the maximum sentence under 21 U.S.C. § 841 was 20 years (240 months), the guideline range was adjusted to 210 months to 240 months pursuant to U.S.S.G. § 5G1.1(c)(1).